# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANNALL MAULDIN**                                    **CIVIL ACTION**

**VERSUS**                                                       **NO.  13-6202**

**N. BURL CAIN, WARDEN**                          **SECTION "I" (4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Rannall Mauldin ("Mauldin"),[2] is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]  On March 26, 2008, Mauldin was indicted by a Grand Jury in Washington Parish for the first degree murder of Stanley Willett.[4]  Mauldin entered a plea of not guilty to the charge on April 8, 2008.[5]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Mauldin's first name is spelled "Ranall" in the state court pleadings and is spelled "Rannall" in the pleadings submitted to this Court.

[3] Rec. Doc. Nos. 3, 16.

[4] St. Rec. Vol. 1 of 6, Indictment, 3/26/08.

[5] St. Rec. Vol. 5 of 6, Minute Entry, 4/8/08.

The record reflects that, around 6:00 a.m. to 6:30 a.m. on February 9, 2008, Michael Cotton, a resident of Bogalusa, Louisiana, was driving down Shriner Drive when he saw a man and an overturned wheelchair in the ditch.[6]  Cotton called 911.  The man, later identified as 75-year old Stanley Willett, was a paraplegic confined to a wheelchair.  He had been shot twice in the head from close range.  According to the pathologist who performed the autopsy, Willett died within minutes after being shot.

The investigation by the Bogalusa Police Department led to Mauldin as a suspect in Willett's murder.  Mauldin had been at the home of his half-brother and sister-in-law, Scott and Christie Taylor.  Their home was across the street from Willett's home, and Mauldin knew Willett.  The police discovered that on the morning Willett was killed, Mauldin accompanied Willett to the Hancock Bank automated teller machine ("ATM").  At 5:17 a.m. that morning, Willett withdrew $80.00.  Over the two days following Willett's death, Mauldin withdrew over $1,400.00 from Willett's bank account using the ATM card.  Mauldin went to various places in Bogalusa to withdraw the money, including a Citizen's Savings Bank and a Junior Food Mart.

When Mauldin was apprehended by the police on February 11, 2008, he was taken to a detective's office at the police station where he gave a recorded statement.  After being advised of his *Miranda* rights, Mauldin initially denied that he shot Willett.  He told police that he heard that a black man named "Charles" shot Willett.  Later, however, as the questioning continued, Mauldin admitted that he took Willett's ATM card and then shot Willett twice.  He shot Willett with Willett's own gun, a .38 caliber revolver that Willett carried with him in a pouch around his waist.  Mauldin

---

[6]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Mauldin*, No. 2010 KA 1240, 2011 WL 3243759, at *1 (La. App. 1st Cir. Jun. 10, 2011); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2010-KA-1240, pp. 2-3, 6/10/11.

also told police that he withdrew money using Willett's ATM card to buy cocaine.  Mauldin told the officers that, after shooting Willett, he threw the gun into the woods behind the VFW Hall in Bogalusa.  The police officers took Mauldin to the woods and had him point out the area where he discarded the gun.  The next day, the police found Willett's gun where Mauldin said it would be.  They also located the ATM card where Mauldin hid it at his brother's home.

Mauldin was tried before a jury on August 13, 17, 18, and 19, 2009, and found guilty as charged by unanimous verdict.[7]  On September 14, 2009, the Trial Court denied Mauldin's motion for new trial and, after waiver of legal delays, sentenced Mauldin to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal, Mauldin's appointed counsel asserted two errors:[9] (1) the Trial Court erred in failing to suppress the confession based on the detectives promise of leniency; and (2) the evidence was insufficient to support the verdict.  The Louisiana First Circuit affirmed Mauldin's conviction and sentence on June 10, 2011, finding no merit in the claims.[10]

The Louisiana Supreme Court denied Mauldin's related writ application without stated reasons on December 16, 2011.[11]  His conviction and sentence became final ninety (90) days later, on March 15, 2012, because he did not file a writ application with the United States Supreme Court.

---

[7]St. Rec. Vol. 1 of 6, Jury Verdict, 8/19/09; St. Rec. Vol. 5 of 6, Trial Minutes, 8/13/09; Trial Minutes, 8/17/09; Trial Transcript, 8/19/09; St. Rec. Vol. 6 of 6, Trial Minutes, 8/18/09; Trial Minutes, 8/19/09; St. Rec. Vol. 2 of 6, Trial Transcript, 8/13/09; St. Rec. Vol. 3 of 6, Trial Transcript, 8/17/09; St. Rec. Vol. 4 of 6, Trial Transcript, 8/18/09.

[8]St. Rec. Vol. 5 of 6, Sentencing Minutes, 9/14/09; Sentencing Transcript, 9/14/09; St. Rec. Vol. 1 of 6, Motion for New Trial, 9/14/09.

[9]St. Rec. Vol. 5 of 6, Appeal Brief, 2010-KA-1240, 3/2/11.

[10]*Mauldin*, 2011 WL 3243759, at *1; St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2010-KA-1240, 6/10/11.

[11]*State v. Mauldin*, 76 So.3d 1201 (La. 2011); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2011-KO-1458, 12/16/11; La. S. Ct. Writ Application, 11-KO-458, 7/5/11 (dated 6/29/11, postal metered 6/30/11).

*Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

On April 12, 2011, Mauldin submitted an application for post-conviction relief to the Trial Court raising the following grounds for relief:[12] (1) he was denied effective assistance of counsel where his trial counsel failed to file a motion to suppress the confession on the grounds that an investigator used the Holy Bible as coercion to get the confession; and (2) he was denied effective assistance of counsel where trial counsel failed to investigate his claim that there was another shooter. The Trial Court denied the application on September 10, 2012, stating that the issues had already been raised and considered at trial and on direct appeal of the conviction.[13]

Mauldin sought review of this order in the Louisiana First Circuit.[14] The Court granted the writ and ordered the Trial Court to consider the claims, noting that neither claim had been raised on appeal.[15]

On reconsideration, the Trial Court outlined the proceedings held on the motion to suppress the confession in which the issue of the Bible had in fact been referenced and used by defense

---

[12]St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 4/22/12 (dated 4/12/12); Memorandum in Support, undated.

[13]St. Rec. Vol. 5 of 6, Trial Court Order, 9/10/12.

[14]St. Rec. Vol. 6 of 6, 1st Cir. Writ Application, 2012-KW-1621, 10/2/12.

[15]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2012-KW-1621, 12/3/12.

counsel during questioning of the police officers.[16]   The Court's denial of the motion to suppress based on all of the argument and testimony was affirmed on direct appeal by the Louisiana First Circuit. The Court considered the performance of defense counsel and the fact that Mauldin testified at trial regarding the other man and his alleged role in the shooting.  The matter thus was presented to the jury along with other facts that pointed to Mauldin as the shooter.  The Court again found that the issued raised in the application for post-conviction relief had already been raised and considered in the pretrial motion and on direct appeal, and otherwise were without merit.

The Louisiana First Circuit denied Mauldin's subsequent writ application on April 8, 2013, with stated reasons.[17]   On October 4, 2013, the Louisiana Supreme Court denied Mauldin's related writ application without stated reasons.[18]

## II.     **Federal Petition**

On November 15, 2013, the Clerk of this Court filed Mauldin's federal petition for habeas corpus relief in which he asserted four grounds for relief:[19]  (1) he was denied effective assistance of counsel where his trial counsel failed to filed a motion to suppress the confession on the grounds that an investigator used the Holy Bible as coercion to get the confession; (2) he was denied effective assistance of counsel where trial counsel failed to investigate his claim that there was another shooter; (3) the Trial Court erred in failing to suppress the confession based on the detectives promise of leniency; and (4) the evidence was insufficient to support the verdict.

---

[16]St. Rec. Vol. 5 of 6, Trial Court Judgment, 1/8/13.

[17]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2013-KW-0217, 4/8/13; St. Rec. Vol. 6 of 6, 1st Cir. Writ Application, 2013-KW-0217, 2/5/13.

[18]*State ex rel. Mauldin v. State*, 122 So.3d 1016 (La. 2013); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2013-KH-0907, 10/4/13; La. S. Ct. Writ Application, 13-KH-907, 4/24/13 (dated 4/18/13).

[19]Rec. Doc. No. 3, p. 24.

The State filed an answer and memorandum in opposition to Mauldin's petition conceding its timely filing and exhaustion of the claims. The State, however, argued that Mauldin's claims are without merit and he is not entitled to habeas relief.[20] Mauldin replied to the State's opposition response re-urging the merits of his claims.[21]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this Court no later than October 16, 2013.[23] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timeliness of the petition, exhaustion of state court review of the claims, and does not raise the defense of procedural bar. This Court will review Mauldin's claims.

---

[20]Rec. Doc. Nos. 14, 15.

[21]Rec. Doc. No. 16.

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Mauldin's federal habeas petition on November 15, 2013, when the filing fee was received after denial of pauper status. Mauldin presented his pleadings to the prison officials on October 16, 2013, for e-mailing to this Court. Rec. Doc. No. 1, p. 1.

IV.     **Standards of a Merits Review**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.    Effective Assistance of Counsel (Claim Nos. 1 and 2)

Mauldin raises two grounds in support of his claim of ineffective assistance of trial counsel. He first contends that counsel failed to seek suppression of the confession based on the presence of a Bible in the investigators office when he gave his statement.  He also contends that trial counsel failed to investigate his defense that another man was the shooter.  As outlined above, these issues were raised on post-conviction review and the state courts found them to be meritless.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan*, 980 at 296.  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty*, 583 F.3d at 258. The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore,

"[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles*, 556 U.S. at 123). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### A.  <u>Motion to Suppress</u>

The record reflects that counsel filed a pretrial motion to suppress the inculpatory statements on the general grounds that they "were  made under the influence of fear, duress, intimidation, menaces, threats, inducements, and promises . . ."[24]  At the hearing held December 4, 2008, however, counsel advised that the statements should be suppressed because "promises were made and that what we consider unusual conduct occurred during the interview."[25]  It was not disputed that Mauldin admitted in his statement that he used Willett's ATM card because he was caught on video doing so.[26]  The focus of the motion was Mauldin's confession that he shot and killed Willett.[27]

Contrary to Mauldin's argument, defense counsel raised the issue of the Bible in the chair next to Mauldin during the police interview.  The record reflects that both the prosecutor and defense counsel questioned the officers about the Bible, described as a "little Gideon Bible" that was on the chair next to Mauldin and which could be seen in parts of the video.[28]  Sergeant Troy

---

[24]St. Rec. Vol. 1 of 6, Motion to Suppress, 4/18/08.

[25]St. Rec. Vol. 1 of 6, Motion Hearing Transcript, pp. 3-4, 12/4/08.

[26]*Id.*, pp. 15-16.

[27]*Id.*

[28]*Id.*, p. 16 (Captain Joel Culpepper); p. 30 (Lieutenant Tommie Sorrell); p. 32 (Sergeant Troy Tervalon).

Tervalon testified that he placed the "small version" of the Bible in the chair before the interrogation started.[29]  He stated that he put it there so that Mauldin's "conscience would kick in, to tell the truth."[30]  He indicated that he said nothing to Mauldin about the Bible and placed it there before Mauldin was brought into the room.[31]  It was just a technique he used.[32]

The record also demonstrates that, in spite of this questioning, Mauldin himself insisted during the hearing that his only issue with the voluntariness of his confession was the alleged promise made to him that he would get manslaughter.[33]  Mauldin never mentioned or referenced the Bible as an influence or concern during his questioning by the officers.

The record demonstrates that Mauldin's counsel did take issue with the presence of the Bible during the interview and included the argument to bolster the alleged coercive circumstances forming the basis of the motion to suppress the confession.  Mauldin's suggestion otherwise is without factual support.

In addition, there is no law to suggest that the mere presence of the Bible would have been sufficient for counsel to establish coercion of the confession.  *See Williams v. Norris*, 576 F.3d 850, 868-69 (8th Cir. 2009) (references from the Bible and appeals to God are not alone coercive); *Williams v. Jacquez*, No. 05-0058, 2011 WL 703616, at *24 n.19 (E.D. Cal. Feb. 19, 2011) (officers indicating during interview that the Bible instructs that a person tell the truth), *order adopting aff'd*, 472 F. App'x 851 (9th Cir.), *cert. denied*, __ U.S. __, 132 S. Ct. 378 (2012).  Thus, counsel was

---

[29]*Id.*, p. 32 (Sergeant Tervalon).

[30]*Id.*, p. 33 (Sergeant Tervalon).

[31]*Id.*

[32]*Id.*

[33]*Id.*, pp. 47-48 ( Mauldin).

under no professional obligation to re-urge that point by separate motion to suppress when the argument was already rejected by the Trial Court. *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."); *see also*, *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Relief on this claim was properly denied by the state courts and the denial was not contrary to *Strickland*.  Mauldin is not entitled to relief on this point.

## B.   Investigation of the Other Shooter

Mauldin also claims that his counsel was deficient in failing to investigate his "alibi" defense that he and Willett were robbed by "Barry," an acquaintance also known as Charles from whom Mauldin often bought drugs, and that Barry was the shooter.  Mauldin claims that he gave this information to counsel and counsel failed to investigate it further.  Mauldin suggests that counsel could have had Barry's cell-phone usage traced and the gun dusted for Barry's fingerprints.

A habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th

Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).  Mauldin has provided no basis to undermine the deference due his counsel's trial decisions or the denial of relief on this issue by the state courts.

As an initial consideration, Mauldin has not established that counsel failed to investigate or acted deficiently in failing to investigate the alleged other shooter.  Mauldin admittedly had no information about Barry for counsel to investigate.  For example, in the midst of his monologic trial testimony, Mauldin indicated that he knew Barry as both Barry and Charles, but did not know his last name.[34]  He did not know where he lived or where he could be found.[35]  He had known him for about eight months before the murder and could only reach him by phone to set up a drug purchase. Mauldin did not know Barry to have ever been in jail or the subject of police scrutiny.

On this limited information, it was reasonable that counsel could not locate the mysterious Barry to solve a murder to which his client had already confessed, twice.  With this confession looming, Mauldin cannot demonstrate prejudice resulting from counsel's inability to locate Barry or have the gun tested for fingerprints.

In addition, counsel was faced with diametrically opposed positions from Mauldin both of which were fully presented to the jury.  The jury heard the confession and the contrived story about Barry.  Mauldin had not denied the truthfulness of his confession on the record until trial.  At trial, against counsel's advise, Mauldin took the stand and told the story about the robbery by Barry and the shooting, a story he claimed to have initially reported to police by using the name Charles.

---

[34]St. Rec. Vol. 5 of 6, Trial Transcript, pp. 12-13, 8/19/09.

[35]*Id.*, p. 13.

However, the veracity of Mauldin's trial testimony was challenged by the State through presentation of his sworn admissions made during the suppression hearing.[36]  At the suppression hearing, on questioning by his counsel, Mauldin admitted that Willett was the first person he ever killed.[37]  The prosecutor pointed out other incidents where during the suppression hearing Mauldin acknowledged that he shot Willett.[38]

With respect to the gun, upon questioning by both defense counsel and the prosecution, the investigating officer, Captain Joel Culpepper, testified that, in his years of experience as a latent fingerprint expert, he has never recovered fingerprints from a pistol like that used in this case.[39]  Had counsel asked for such testing, it would have been futile.

Thus, in spite of Mauldin's vacilations regarding his guilt, both versions of the events leading to Willett's death were presented in full to the jury.  The jury clearly chose to discredit Mauldin's theory and resolve the verdict in favor of his already admitted guilt.  Mauldin, therefore, has not shown that a reasonable probability existed that, but for counsel's alleged failure to further investigate the Barry/Charles story, the result of the proceeding would have been different.

For all of the foregoing reasons, Mauldin has failed to prove ineffective assistance of counsel under *Strickland* or that denial of relief on those claims presented to the state courts was contrary to, or an unreasonable application of, *Strickland*.  He is not entitled to relief on these claims.

---

[36]*Id.*, pp. 21-24.

[37]*Id.*, p. 23; St. Rec. Vol. Motion Hearing Transcript, p. 42 (Mauldin), 12/4/08.

[38]*Id.*, p. 24; St. Rec. Vol. Motion Hearing Transcript, p. 46 (Mauldin), 12/4/08.

[39]St. Rec. Vol. 4 of 5, Trial Transcript, pp. 98, 101 (Captain Joel Culpepper).

## VI.   <u>Denial of the Motion to Suppress/Coerced Confession (Claim No. 3)</u>

Mauldin alleges that the state trial court erred in denying his motion to suppress where the confession was coerced by promises made to him by Sergeant Troy Tervalon.  Specifically, he alleges that Sergeant Tervalon promised him during a break in the recorded interview that he would help him get manslaughter if he would confess to Willett's murder.

Mauldin's appointed counsel presented this argument on direct appeal.  The claim was rejected as meritless by the Louisiana Fifth Circuit which noted that, based on the testimony at the suppression hearing and trial, Mauldin was not made any promises and the statements made by Sergeant Tervalon were not improper.  The Louisiana Supreme Court denied Mauldin's subsequent writ application without additional reasons.

The issue of the voluntariness of a confession is a mixed question of law and fact.  *Miller v. Fenton*,  474 U.S. 104, 112 (1985); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007) (citing *Miller*, 474 U.S. at 112).  A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998).  The state court's related factual determinations are presumed to be correct and are overturned only if they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U .S.C. § 2254(d)(2); *Barnes*, 160 F.3d at 222.

For the waiver of one's rights to be voluntary, the court must first determine whether it was the product of intimidation, coercion, or deception and if it was made with full awareness of the accused's constitutional rights. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Determining whether

17

officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings in that regard are entitled to deference and the presumption of correctness when supported by the record.  *Miller*, 474 U.S. at 112; *Carter v. Johnson*, 131  F.3d 452, 462 (5th Cir. 1997); *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992).

If the underlying facts indicate the presence of some persuasive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination.  *Miller*, 474 U.S. at 117; *ShisInday*, 511 F.3d at 522.  However, in determining voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'"  *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (*quoting Moran v. Burbine*, 475 U.S. 412, 424 (1986)).

As referenced previously, the record reflects that counsel filed a pretrial motion to suppress the inculpatory statements based in part on alleged promises made.[40]  At the suppression hearing held December 4, 2008, counsel argued that promises were made regarding reduction of the charge to manslaughter and that but for these promises, Mauldin would not have confessed to shooting Willett.[41]

Each of the officers testified that no coercion, threats or promises were made to get Mauldin to confess either on camera or during the breaks noted in the record.[42]  Mauldin was lucid, coherent

---

[40]St. Rec. Vol. 1 of 6, Motion to Suppress, 4/18/08.

[41]St. Rec. Vol. 1 of 6, Motion Hearing Transcript, pp. 3-4, 12/4/08.

[42]*Id.*, pp. 4-5 (Captain Culpepper); pp. 22-23 (Lieutenant Tommie Sorrell); p. 32 (Sergeant Troy Tervalon).

with no obvious signs of intoxication although he was fidgety and later claimed to be on cocaine from the day before.[43]   None of the officers told Mauldin he could get the charge reduced to manslaughter if he cooperated and confessed.[44]   Mauldin also did not ask for an attorney on or off the camera.[45]

As noted previously, both the prosecutor and defense counsel questioned the officers about the Bible left in the chair next to Mauldin during the interview.[46]   Sergeant Tervalon testified that he placed a Bible in the chair before the interrogation started as an interrogation technique hoping that Mauldin's "conscience would kick in, to tell the truth."[47]

Sergeant Tervalon also testified that, during the first eleven minute break, he was alone with Mauldin and they exchanged casual conversation.   During that time, he did not promise Mauldin anything, and simply told Mauldin that he could help himself by telling the truth about the whole story, not just bits of it.[48]   The Sergeant indicated that he told Mauldin that he should tell the truth, even if he made a mistake, and people would understand if he had a drug problem.[49]   That statement, however, was repetitive of a statement he made to Mauldin while the tape was running before the break.[50]

---

[43]*Id.*, p. 8 (Captain Culpepper).

[44]*Id.*, pp. 12-13 (Captain Culpepper); pp. 25-26, 29 (Lieutenant Sorrell); pp. 34, 35, 36, 37 (Sergeant Tervalon).

[45]*Id.*, pp. 14-15 (Captain Culpepper); pp. 23, 26-27 (Lieutenant Sorrell); pp. 32, 38 (Sergeant Tervalon).

[46]*Id.*, p. 16 (Captain Culpepper); p. 30 (Lieutenant Sorrell); p. 32 (Sergeant Tervalon).

[47]*Id.*, pp. 32-33 (Sergeant Tervalon).

[48]*Id.*, pp. 33-34.

[49]*Id.*, pp. 34-35.

[50]*Id.*, p. 35.

As determined by the Louisiana First Circuit, based on the testimony at both proceedings, the trial court was free "to believe Detective Tervalon's testimony over the defendant's testimony."[51] This led the courts to the conclusion that Sergeant Tervalon did not make any promises to Mauldin. Mauldin's self-serving recollection of the interview process simply was not persuasive to the state trial court, or to the jury, especially in light of his later restatement of his guilt at the suppression hearing.  These findings and credibility determinations are supported by the record and are not subject to further scrutiny by this federal court on habeas review.

Without a showing of coercion or promise, there is no basis to further question the voluntariness of Mauldin's inculpatory statements on collateral review.  The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.

## VII.   Sufficiency of the Evidence (Claim No. 4)

Mauldin argues that the only evidence of his guilt was his improperly obtained confession. The other circumstantial evidence, he argues, was insufficient to support his conviction and failed to link him to the crime or foreclose the reasonable possibility that "Barry" committed the murder. The Louisiana First Circuit considered this claim on direct appeal.

Relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state case law, the Louisiana First Circuit thoroughly reviewed the evidence and testimony presented to the jury and found that the evidence even without the confession, taken in a light most favorable to the prosecution, supported the guilty verdict.  The Court also noted that the credibility calls made by the jury were not to be second guessed and the evidence was not to be re-weighed.  This was the last

---

[51]*Mauldin*, 2011 WL 3243759, at *4.

reasoned opinion on this issue because the Louisiana Supreme Court denied relief without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that

hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 208.  The appropriate standard for this Court remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).  The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately

supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader*, 904 F.2d at 284).

Mauldin was charged with and convicted of first degree murder, which is defined in relevant part by Louisiana law as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of an armed robbery, first degree robbery, second degree robbery, or simple robbery or where the victim is sixty-five years of age or older. La. Rev. Stat. Ann. § 14:30(1), (5).

The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). Specific intent to kill also can be implied by the intentional use of a deadly weapon, such as a knife or a gun. *State v. Collins*, 43 So.3d at 251 (citing *State v. Brunet*, 674 So.2d 344, 349 (1996)). Thus, to establish specific intent, the State must show that the defendant pulled the trigger, that he acted in concert with an accomplice or co-perpetrator, or that he actively acquiesced in the use of deadly force. *State v. Tate*, 851 So.2d at 930.

In the instant case, the facts are unrefuted that Willett was shot and killed (which led to the theft of his ATM card and other money), and he was 75 years old when he was murdered. Mauldin does not deny that this happened or that the State established these critical elements of the crime of first degree murder. Instead, Mauldin alleges that there was insufficient circumstantial evidence to conclude that he was the perpetrator of the crime. The State is required to prove the identity of the perpetrator in addition to the elements of the crime. *State v. Vasquez*, 729 So.2d 65, 69 (La. App. 5th Cir. 1999). Under Louisiana law, where the key issue is identification the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *Id.*

Mauldin, as well as other testimony and evidence, established that he was with Willett on the morning of the murder. The two men were first reported to be together at the ATM machine at Hancock Bank at 5:17 a.m. Mauldin conceded this in his pretrial statements and trial testimony indicating that Willett withdrew $80 which Mauldin wanted to borrow.[52] The evidence also indicated that, within minutes, at 5:42 to 5:48 a.m., Mauldin alone used Willet's ATM card to withdraw another $200 at the Citizen's Savings Bank.[53]

In the meantime, Willett's body was discovered in the ditch by Michael Cotton between 6:00 a.m. and 6:30 a.m.[54] Around the same time, just prior to full sunrise, Mauldin returned to his brother's home and washed his clothes, including a striped shirt, brown flannel shirt and a camouflage jacket which Christie Taylor knew to belong to Willett.[55]

---

[52]*Id.*, p. 91 (Vickie Craig).

[53]*Id.*, pp. 102-03 (Craig); St. Rec. Vol. 4 of 6, Trial Transcript, p. 10 (Patricia Watson), 8/18/08.

[54]*Id.*, pp. 39-40 (Michael Cotton).

[55]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 18-19 (Christie Taylor), 8/18/08.

Several hours later, at 10:27 a.m., Mauldin withdrew another $200 using Willett's ATM card at the Junior Food Mart.[56]  After that and over the next two days, Mauldin continued to use Willett's ATM card seven times to withdraw $1400.00 at various locations.[57]  Mauldin admittedly used the money to purchase cocaine for his own use.

In the tape of his police interview played for the jury, Mauldin first indicated that he had not seen Willett since around 4:00 p.m. on the Friday before his death.[58]  After being confronted with the various ATM photographs, Mauldin told police that he had the ATM card in his possession since Thursday; he then changed his story to admit that he saw Willett on Saturday morning at a motel.[59]  His story continued to evolve, and he eventually admitted that he was with Willett at the first ATM machine on Saturday morning.[60]  He finally admitted to the officers after further questioning that he shot Willett twice and kept the ATM card.  Mauldin also called his sister-in-law, Christie Taylor, from the station and admitted to her that he had killed Willett.[61]

Mauldin told the police that he fired the weapon three times, once into the air and twice at Willett's head.  Mauldin told the officers where he threw the gun and guided them to the location.[62]  With the lack of sunlight, the officers returned the next day with a canine trained to smell

---

[56]St. Rec. Vol. 3 of 6, Trial Transcript, p. 103 (Craig), 8/17/08.

[57]*Id*., pp. 103, 105-08 (Craig).

[58]*Id*., p. 166 (Sergeant Tervalon).

[59]*Id*., pp. 168-70 (Sergeant Tervalon).

[60]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 69-70 (Captain Culpepper), 8/18/08; St. Rec. Vol. 5 of 6, Trial Transcript, p. 8 (Mauldin), 8/19/08.

[61]*Id*., p. 27 (Taylor).

[62]St. Rec. Vol. 4 of 6, Trial Transcript, pp. 49-50 (David Miller), pp. 70-71, 82-84 (Captain Culpepper), 8/18/08.

gunpowder.  Within minutes, the canine located the gun where Mauldin had indicated it would be.  They also recovered the ATM card where Mauldin told them he hid it at his brother's home.[63]

Mauldin offered at trial the only contradictory testimony which the jury apparently did not believe.  He conceded first that he stole Willett's ATM card and withdrew all of the money from the ATM machines.[64]  He went on to suggest that it was Barry, his drug dealer, who tried to rob them and then shot Willett.[65]  He claimed that he only knew where the gun was because he saw Barry throw the gun into the woods.[66]

Under Louisiana law, when a case involves circumstantial evidence like this, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is some other basis for reasonable doubt.  *State v. Captville*, 448 So.2d 676, 680 (La. 1984).  The jury in this case heard all of the testimony and viewed all of the evidence presented to it at trial and clearly chose not to give credence to Mauldin's unsupported and contrived retraction at trial.

The jury's verdict is a reasonable conclusion where Mauldin did not mention in his pretrial statements and testimony referenced for the jury, that anyone else was present at the scene when Willett was killed.  He offered no one, not even his counsel, any tangible identifying information about Barry or Charles.  A reasonable jury could find his self-serving and unsupported story about the other shooter to be suspect and lacking in credibility.

---

[63]*Id.*, pp. 175-76, 177-80 (Sergeant Tervalon); St. Rec. Vol. 4 of 6, Trial Transcript, p. 47 (Miller), 8/18/08.

[64]St. Rec. Vol. 5 of 6, Trial Transcript, p. 8 (Mauldin), 8/18/08.

[65]*Id.*, pp. 8-9 (Mauldin).

[66]*Id.*, pp. 9-10 (Mauldin).

26

Further, the evidence showed that Mauldin did not call police to report the incident or seek aid for Willett as he laid in the ditch. He instead fled the scene and continued to use Willett's ATM card to fund his cocaine and other purchases. Under Louisiana law, flight under some circumstances "indicates consciousness of guilt, and therefore, is one of the circumstances from which a juror may infer guilt." *State v. Fuller*, 418 So.2d 591, 593 (La. 1982). As resolved by the state appellate court, the jury could have reasonably inferred from his actions and the circumstances as a whole, including his flight from the scene, the washing of his clothes shortly after the murder, the hiding of the ATM card, and falsifying stories to the police, that Mauldin was attempting to avoid detection by the police to cover up his guilt.

Thus, in addition to his inculpatory statements and pretrial testimony, the jury apparently credited the State's testimony and evidence establishing that, in the predawn hours of February 9, 2008, Willett withdrew $80 using his ATM card while Mauldin was with him. Willett did not have his ATM card or the cash on his person when he was found and Willett admitted stealing the ATM card. After the two men went several blocks from the bank towards their homes, Mauldin took Willett's gun and shot him twice in the head. Within minutes of the shooting, Mauldin used Willett's ATM card to withdraw additional funds. He continued to use Willett's ATM card for a couple of days, draining his account of over $1400.00. The credible evidence was therefore sufficient for a reasonable jury to resolve that Mauldin shot Willett to gain access to the additional funds in his account.

For these reasons, Mauldin has not shown that the state trial courts' denial of relief was contrary to, or an unreasonable application of, *Jackson*. He is not entitled to relief on this claim.

## VIII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Mauldin's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[67]

New Orleans, Louisiana, this 11th day of July, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[67]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.